# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CYNTHIA DIETRICH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-1404 |
| | ) | Judge Nora Barry Fischer |
| JACKELYN WEIBEL, | ) | |
| DONNA WILBERT, | ) | |
| DEBRA MCCREARY, and | ) | |
| HUNTINGTON NATIONAL BANK | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**I.  INTRODUCTION**

Presently before the Court are the motions to dismiss (Docket Nos. 28, 35) filed by Jackelyn Weibel ("Weibel") and Donna Wilbert ("Wilbert") (*collectively*, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6) with respect to all claims pled in Plaintiff Cynthia Dietrich's Amended Complaint of November 26, 2013 (Docket No. 27). Plaintiff pleads federal claims under 42 U.S.C. § 1983 against Weibel, and related claims under the law of the Commonwealth of Pennsylvania against Weibel and Wilbert. (*Id.*). This Court exercises subject-matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343 (civil rights). For the following reasons, Weibel's Motion to Dismiss (Docket No. 28) will be GRANTED, in part, and the Court will not exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's remaining state law claims within her Amended Complaint.

## II. PROCEDURAL AND FACTUAL BACKGROUND

At the time of the events in question in the current action, Plaintiff was a single mother with three children. (Docket No. 27 at 2). During 2004, Plaintiff and her children moved into a one bedroom apartment attached to the home of her mother, Defendant Wilbert. (*Id.*). The home was located at 119 Glasgow Road in Gibsonia, Pennsylvania. (*Id.*).

On December 15, 2008, Wilbert and her then-living husband, Frank Wilbert, procured a $100,000.00 loan ("Loan") from Huntington National Bank ("Huntington"). (Docket No. 27 at 2). The branch of the lending institution from which the loan was secured was located in Cranberry Township, Pennsylvania. (*Id.*). At the time, Plaintiff was employed by this branch as a teller. (*Id.*). Approximately $60,000.00 of the total Loan amount was used to pay the balance of a mortgage and home equity loan owed by Wilbert and her husband. (Docket No. 27 at 3). The remaining $40,000.00 was placed in a joint account held by Plaintiff and Wilbert. (Docket No. 27 at 10). Wilbert's husband died in April 2009. (Docket No. 27 at 3). Relations between Plaintiff and Wilbert subsequently soured. (*Id.*). On or about May 8, 2011, Plaintiff and her brother, Frankie Wilbert, had a heated verbal exchange and Plaintiff and her brother's children engaged in a physical altercation as a result. (*Id.*). Wilbert sided with Plaintiff's brother, and evicted Plaintiff and her children from her apartment the following day, May 9, 2011. (*Id.*). Plaintiff and Wilbert were thereafter estranged. (Docket No. 27 at 4).

On May 31, 2011, Wilbert filed a Police Citizen Complaint Report at the Office of the District Attorney of Allegheny County. (Docket No. 27 at 4). Wilbert therein indicated that she had no knowledge of the Loan until May 18, 2011, that she and her husband had never signed Loan documents, that she and her husband had never traveled to Huntington's Cranberry Township branch, and that Plaintiff had fraudulently executed Loan documents and forged

Wilbert and her husband's signatures. (*Id.*). Defendant Weibel, a detective employed by Allegheny County, Pennsylvania, was assigned to Wilbert's complaint and commenced her investigation in August, 2011. (Docket No. 27 at 5). Weibel interviewed Wilbert and Plaintiff's brother Frankie on August 12, 2011. (*Id.*). Wilbert reiterated that she had no prior knowledge of the Loan, that she did not sign the Loan documents, and that her late husband could not have signed the Loan due to his ill health. (*Id.*). Wilbert did admit to possibly signing at least two checks from the account shared with Plaintiff, and into which $40,000.00 of the Loan proceeds had been deposited. (*Id.*). She believed that the checks were used to buy appliances. (Docket No. 27 at 6). Wilbert made no specific accusations against Plaintiff during this interview. (Docket No. 27 at 5 – 7).

Also, on August 12, 2011, Weibel interviewed Debra McCreary ("McCreary"), an employee at the Huntington branch in Cranberry Township. (Docket No. 27 at 7). McCreary was an Account Relationship Associate. (*Id.*). She was also certified by Pennsylvania to act as a notary public. (*Id.*). At the request of the Assistant Branch Manager, Leon Cichoski ("Cichoski"), McCreary often notarized documents for Huntington, sometimes while not in the presence of the signatories. (Docket No. 27 at 7 – 8). Weibel inspected McCreary's notary log, which indicated that Wilbert's Loan had not been notarized in her or her husband's presence. (Docket No. 27 at 7). McCreary made no mention of any involvement by Plaintiff in the procurement of the Loan. (Docket No. 27 at 8).

On September 6, 2011, Weibel interviewed Plaintiff by telephone regarding Wilbert's Loan. (Docket No. 27 at 9). Plaintiff was able to explain some of the details of the Loan, including its procurement by Wilbert and her husband in December, 2008. (Docket No. 27 at 9). Plaintiff also informed Weibel that she had been making payments on the Loan on her mother's

3

behalf until the family altercation and subsequent eviction in May, 2011. (Docket No. 27 at 9). Plaintiff denied obtaining the Loan. (Docket No. 27 at 9).

Weibel interviewed Cichoski on September 12, 2011. (Docket No. 27 at 8). Cichoski communicated that loan documents were frequently completed over the telephone or outside of the office. (Docket No. 27 at 8). He had a vague recollection of Wilbert's Loan, but did not believe that he was present for the signing of Loan documents, because his signature was missing from the documents where he should have signed. (Docket No. 27 at 8). Other deficiencies in the Loan documents – including a lack of copies of Wilbert and her husband's identifications – were pointed out by Weibel during her interview with Cichoski, but Cichoski was unable to explain these deficiencies. (Docket No. 27 at 9). Cichoski also denied having any knowledge as to whether Plaintiff was involved in procuring the Loan. (Docket No. 27 at 9).

Pursuant to her investigation, Weibel also inspected documents from Huntington regarding the Loan, as well as some account information belonging to Plaintiff and Wilbert. (Docket No. 27 at 9 – 10). It was readily apparent from these documents that $60,000.00 of the Loan proceeds was used to pay prior debts of Wilbert and her husband. (Docket No. 27 at 10). The remaining $40,000.00 was made payable to cash in Wilbert's name, and placed in a bank account held jointly by Wilbert and Plaintiff. (Docket No. 27 at 10). No evidence was reviewed with respect to the ultimate disposition of the funds in the joint bank account. (Docket No. 27 at 10).

On September 27, 2011, Weibel filed an Affidavit of Probable Cause ("Affidavit") against Plaintiff. (Docket No. 27 at 11). Plaintiff was charged therein with violating 18 PA. CONS. STAT. § 3922(a)(1) (theft by deception) and 18 PA. CONS. STAT. § 4101(a)(3) (forgery). On September 30, 2011, Plaintiff was arrested and incarcerated for approximately eight-and-one-

4

half hours. (Docket No. 27 at 13). A preliminary hearing was held on November 2, 2011. (Docket No. 27 at 13). A criminal trial was conducted on May 15 and 16, 2013. (Docket No. 27 at 13). Contemporaneous to her criminal prosecution, the Pennsylvania State Police and an expert hired by Plaintiff's defense counsel conducted handwriting analyses that revealed that Wilbert had, in fact, signed the Loan documents. (Docket No. 27 at 6). During cross-examination of Wilbert at trial, she admitted to having knowledge of the Loan prior to May 2011. (Docket No. 27 at 13 – 14). Plaintiff was acquitted of all charges. (Docket No. 27 at 14).

Huntington conducted an internal review of the circumstances surrounding the issuance of the Loan. (Docket No. 27 at 14). Following this review, Huntington released Wilbert from any remaining unpaid balance on the Loan through execution of a satisfaction document on October 20, 2011. (Docket No. 27 at 14). Plaintiff was not implicated as having any involvement with the procurement of the Loan during Huntington's review. (Docket No. 27 at 14).

Plaintiff filed a Complaint in this Court on September 27, 2013. (Docket No. 1). An Amended Complaint followed on November 26, 2013. (Docket No. 27). In Counts I and III of her Amended Complaint, Plaintiff alleges that Weibel was liable for false arrest and malicious prosecution in violation of the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983 ("§ 1983"). (Docket No. 27 at 15, 17). In Counts II, IV, and V[1], Plaintiff asserts that both Weibel and Wilbert are liable for false arrest, malicious prosecution, and abuse of process according to the laws of the Commonwealth of Pennsylvania. (Docket No. 27 at 16, 18 – 19). Counts VI and VII allege state causes of action against McCreary and Huntington, but these are not presently at issue. (Docket No. 27 at 20 – 21).

---

[1] In her responsive briefs, Plaintiff voluntarily dismissed Count V against both Weibel and Wilbert. (Docket Nos. 31 at 13; 39 at 9).

5

Motions to dismiss, and accompanying briefs in support were independently filed by Weibel (Docket Nos. 28, 29) and Wilbert (Docket Nos. 35, 36). Plaintiff filed a brief in opposition to Weibel's Motion to Dismiss on December 23, 2013. (Docket No. 31). Weibel responded on December 31, 2013. (Docket No. 34). Plaintiff filed a brief in opposition to Wilbert's Motion to Dismiss on January 28, 2014. (Docket No. 39). No further filings have been submitted by any parties relative to the motions to dismiss. The issues having been fully briefed, the motions filed by Weibel and Wilbert are ripe for disposition.

**III. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a short and plain statement of a claim, and show that the pleader is entitled to relief. Dismissal of a complaint or portion of a complaint is warranted under Federal Rule of Civil Procedure 12(b)(6) when a claimant fails to sufficiently state a claim upon which relief can be granted. Avoiding dismissal under Rule 12(b)(6) requires a pleading party's complaint to provide "enough factual matter" to allow the case to move beyond the pleading stage of litigation; the pleader must "'nudge his or her claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F. 3d 224, 234 – 35 (3d Cir. 2008) (quoting *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, 556, 570 (2007)).

In assessing the merits of a claim subject to a motion to dismiss, a court must engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F. 3d 203, 210 – 11 (3d Cir. 2009). First, factual and legal elements of a claim must be distinguished. *Id.* Second, it must be determined whether the facts as alleged support a "plausible claim for relief." *Id.* In making the latter determination, the court must be mindful that the matter pleaded need not include "detailed factual allegations," *Phillips*, 515 F. 3d at 231 (quoting *Twombly*, 550 U.S. at 555), and the court

must construe all alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *Id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F. 3d 651, 653 (3d Cir. 2003)). Moreover, a pleading party need only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler*, 578 F. 3d at 213 (quoting *Graff v. Subbiah Cardiology Associates, Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)). A well-pleaded complaint, even when "it strikes a savvy judge that actual proof of . . . facts is improbable," will not be dismissed as long as the pleader demonstrates that his or her claim is plausible. *Phillips*, 515 F. 3d at 234 (quoting *Twombly*, 550 U.S. at 555 – 56).

Nevertheless, the facts provided do need to raise the expectation of relief above a purely speculative level, and must include more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Phillips*, 515 F. 3d at 231 – 32 (quoting *Twombly*, 550 U.S. at 554 – 56). Rule 8(a)(2) "requires a 'showing' rather than a blanket assertion of an entitlement to relief." *Id.* at 232. "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Fowler*, 578 F. 3d at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

IV. DISCUSSION

    A. **§ 1983 Liability**

        **1. Count I: False Arrest**

In Count I of Plaintiff's Amended Complaint, she argues that under § 1983 Weibel is liable for false arrest in violation of the Fourth Amendment. (Docket No. 27 at 15 – 16). Under § 1983, liability for false arrest may be found when it is shown "by a preponderance of the evidence: (1) that the police officer knowingly and deliberately, or with reckless disregard for the

truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary to the finding of probable cause." *Toribio v. Spece*, -- F. App'x --, 2014 WL 661341 at * 2 (3d Cir. 2014) (quoting *Wilson v. Russo*, 212 F. 3d 781, 787 (3d Cir. 2000)). In responsive briefing, Plaintiff claims that Weibel lacked probable cause to arrest, that the affidavit of probable cause used to obtain a warrant was deficient on its face, and that Weibel at least recklessly omitted and misconstrued relevant facts within the affidavit. (Docket No. 31 at 6 – 13). As such, not only does Plaintiff allege a viable claim for false arrest in violation of the Fourth Amendment, but she further asserts that Weibel cannot be shielded by qualified immunity. (*Id.*). Weibel counters that the facts included in her affidavit were sufficient to give rise to the conclusion that probable cause existed to arrest Plaintiff for theft by deception and forgery, and she should enjoy qualified immunity as a result. (Docket Nos. 29 at 5 – 14; 34 at 1 – 2).

Irrespective of the validity of the warrant presently at issue, and whether Plaintiff can adequately plead that a false arrest occurred, qualified immunity may relieve Weibel of liability if her conduct did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, -- U.S. --, 132 S. Ct. 1235, 1244 (2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Qualified immunity provides "government officials breathing room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Ashcroft v. al-Kidd*, -- U.S. --, 131 S. Ct. 2074, 2085 (2011); *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Court must look to the "objective legal reasonableness" of Weibel's actions in seeking the warrant to arrest Plaintiff. *Id.* at 1245 (citing *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). The facts known to Weibel at the time of application for the warrant are relevant to

this issue, but Weibel's subjective motivations are not. *Blaylock v. City of Philadelphia*, 504 F. 3d 405, 411 (3d Cir. 2007) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)). In making its ultimate determination, the Court will look to whether Plaintiff has shown that a constitutional right was violated and that the right at issue was clearly established. *Pearson*, 555 U.S. at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

Presently, it is not disputed by the parties that Plaintiff enjoys a Fourth Amendment right to freedom from unreasonable searches and seizures, without probable cause, and the Court finds this right to be clearly established. *Mitchell v. Obenski*, 134 F. App'x 548, 550 (3d Cir. 2005) (citing *Groh v. Ramirez*, 540 U.S. 551, 563 – 64 (2004)); *Johnson v. Watson*, 113 F. App'x 482, 485 (3d Cir. 2004) (citing *Orsatti v. New Jersey State Police*, 71 F. 3d 480, 483 (3d Cir. 1995)). The issue the Court is faced with is the objective reasonableness of Weibel's assertion of probable cause in the procurement and execution of the warrant to arrest Plaintiff for the crimes of theft by deception and forgery under Pennsylvania law. "Probable cause to arrest exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested." *Paff v. Kaltenbach*, 204 F. 3d 425, 436 (3d Cir. 2000) (citing *United States v. Cruz*, 910 F. 2d 1072, 1076 (3d Cir. 1990)). Probable cause is a "fluid concept – turning on the assessment of probabilities in particular factual context – not readily, or even usually, reduced to a neat set of legal rules. *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). It does not "require the same type of specific evidence...as would be needed to support a conviction." *Fiore v. City of Bethlehem*, 510 F. App'x 215, 221 (3d Cir. 2013) (quoting *Reedy v. Evanson*, 615 F. 3d 197, 211 (3d Cir. 2010)). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Toribio*, 2014 WL

661341 at *3 (quoting *Hill v. California*, 401 U.S. 797, 804 (1971)). Further, "[p]robable cause need only exist as to any offense that could be charged under the circumstances." *Paff*, 204 F. 3d at 435 n. 6 (quoting *Barna v. City of Perth Amboy*, 42 F. 3d 809, 819 (3d Cir. 1994)).

In her Affidavit (Docket No. 1-3 at 1), Weibel first charged Plaintiff with the commission of theft by deception in violation of 18 PA. CONS. STAT. § 3922(a)(1), which provides in pertinent part that:

> (a) Offense defined.--A person is guilty of theft if he intentionally obtains or withholds property of another by deception. A person deceives if he intentionally:
>
> (1) creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;

*Id.* Additionally, Weibel charged Plaintiff with the commission of forgery in violation of 18 PA. CONS. STAT. § 4101(a)(3), which provides in pertinent part that:

> (a) Offense defined.--A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor:
>
> (1) alters any writing of another without his authority;
>
> (2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or
>
> (3) utters any writing which he knows to be forged in a manner specified in paragraphs (1) or (2) of this subsection.

*Id.* Weibel indicated within the Affidavit that she based her decision to seek the arrest warrant upon information provided by Wilbert – whom Weibel noted to be reliable – as well as details gleaned from her independent investigation. (Docket No. 1-3 at 1). Magisterial District Judge David Sosovicka approved a warrant for Plaintiff's arrest based on said Affidavit. (*Id.*).

10

As an initial matter, when a warrant is alleged to violate the Fourth Amendment, the fact that a neutral magistrate has issued it "is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt*, 132 S. Ct. at 1245 (citing *United States v. Leon*, 468 U.S. 897, 922 – 23 (1984)). "[I]t is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment." *Id.* (citing *Leon*, 468 U.S. at 921). Reviewing courts are to "accord significant deference to a magistrate's finding of probable cause to arrest." *Lindenbaum v. Erenius*, 433 F. App'x 119, 120 (3d Cir. 2011) (citing *Gates*, 462 U.S. at 236). As such, while the mere fact of issuance of a warrant by a neutral magistrate "does not end the inquiry into objective reasonableness," "in the ordinary case, an officer cannot be expected to question the magistrate's probable cause determination." *Messerschmidt*, 132 S. Ct. at 1245 (citing *Malley*, 475 U.S. at 341; *Leon*, 468 U.S. at 923). Therefore, Plaintiff must meet the high threshold of demonstrating that no reasonably competent officer would have concluded that Weibel's warrant should have issued because her affidavit was so "lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* "The occasions on which this standard will be met may be rare, but so too are the circumstances in which it will be appropriate to impose personal liability on a lay officer in the face of judicial approval of his actions." *Id.* at 1250.

Plaintiff would have this Court find that such a rare occasion currently exists. Plaintiff argues that the Affidavit was facially invalid because it failed to provide any basis upon which Plaintiff committed a crime, that Weibel failed to include exculpatory evidence known to Weibel in the Affidavit, and all the facts as known by Weibel at the time of her application for an arrest warrant would not have permitted a reasonable officer to conclude that probable cause to arrest

Plaintiff for theft by deception or forgery existed. (Docket Nos. 27 at 15 – 16; 31 at 6 – 10). While it is true that "a valid warrant does not immunize an officer from suit if 'his reliance on it is unreasonable' in light of 'other information that the officer possesses or to which he has reasonable access,'" *Fiore*, 510 F. App'x at 222 (quoting *Berg v. County of Allegheny*, 219 F. 3d 261, 273 (3d Cir. 2000)), such is not the case at present.

The pertinent facts found within the Affidavit included:

- Weibel was a Certified Fraud Examiner with the Allegheny County District Attorney's Office for two years prior to becoming a detective with the District Attorney's office;
- Weibel had a history of assisting in the detection and prosecution of financial crime cases;
- Weibel had significant experience investigating and prosecuting white collar crimes;
- Plaintiff lost her home to foreclosure in 2007;
- Plaintiff thereafter resided at the home of Wilbert and her father in an attached one-bedroom apartment;
- Plaintiff informed her parents that she spoke with the loan officer at Huntington about obtaining a loan for $30,000.00 to enlarge the apartment;
- On December 8, 2008, a $100,000.00 line of credit in the name of Wilbert and her husband was closed at Huntington;
- Wilbert informed Weibel that she had no knowledge of the Loan, that she never signed the Loan documents, that her husband was too ill to have signed the Loan documents at the time of closing due to Parkinson's and Alzheimer's, that the loan documents indicated Wilbert's middle initial was "A," when in fact it was "V," and that the year of Wilbert's birth was incorrect in the Loan documents;
- Wilbert did not know of a Huntington account in her name;
- Wilbert believed her last mortgage to have been paid-off several years prior;
- Plaintiff had stated to Weibel that she had been making payments on the Loan for seven years prior to being evicted from Wilbert's apartment;
- Bank records showed that approximately $60,000.00 of the Loan had been used to pay off a legitimate mortgage on Wilbert's house;
- Approximately $40,000.00 of the Loan was being accessed for Plaintiff's personal benefit from a Huntington account under Plaintiff and Wilbert's names; and,
- Weibel averred that the evidence gained from an investigation conducted by Weibel led her to ultimately conclude that, under false pretenses, Plaintiff fraudulently obtained the Loan in her parents' names and forged their signatures on Loan documents while she worked for Huntington.

(Docket No. 1-3 at 2 – 3). Plaintiff does not believe that the provision of these facts within the Affidavit was sufficient to demonstrate probable cause to arrest Plaintiff for theft by deception and forgery. Yet, this was not a "bare bones" affidavit. There is factual matter explicitly cited to support Weibel's conclusions, *see Gates*, 462 U.S. at 239; *Nathanson v. United States*, 290 U.S. 41 (1933); *Aguilar v. Texas*, 378 U.S. 108 (1964), there was no knowing reliance upon stale evidence, *see United States v. Zimmerman*, 277 F. 3d 426, 437 (3d Cir. 2002), and there was no reliance upon an uncorroborated or unreliable anonymous tip, *see United States v. Williams*, 3 F. 3d 69, 74 (3d Cir. 1993). *See also United States v. Pavulak*, 700 F. 3d 651, 664 (3d Cir. 2012).

The totality of the facts as averred demonstrated that Plaintiff had the need for money following a foreclosure and subsequent move to a small apartment with her children; Plaintiff had knowledge of the terms of the Loan and was allegedly making payments on the Loan; Wilbert claimed to have no knowledge of the Loan and was not involved in the procurement of the Loan; and, the Loan was obtained from Plaintiff's place of employment. (Docket No. 1-3 at 2 – 3). Weibel had a history of investigation and prosecution of similar white collar crimes, and felt that – following an investigation of the parties – the circumstances demonstrated that Plaintiff had the motive and opportunity to commit the alleged crimes. (*Id.*). While the Affidavit may not have been iron-clad, in a case like this it did not need to be, *Paff*, 204 F. 3d at 437 (absent a confession, law enforcement must rely upon circumstantial evidence to infer *mens rea*), and qualified immunity does not require such, *Messerschmidt*, 132 S. Ct. at 1249 (law enforcement is given breathing room to make reasonable, but mistaken judgments). Moreover, the warrant was executed by a neutral magistrate, bolstering Weibel's assertion of probable cause and reasonable reliance upon her Affidavit. *Id.* at 1245. There is nothing, here, to suggest that Weibel knowingly or with reckless disregard violated Plaintiff's Fourth Amendment rights by

13

providing false or misleading information, or that she – and by extension the magistrate – were plainly incompetent in executing the warrant in this case.

Plaintiff goes on to argue that Weibel allegedly omitted relevant information obtained from her investigation from the Affidavit, and that such information would have precluded the magistrate, or any reasonable law enforcement official, from concluding that probable cause existed to arrest Plaintiff for theft by deception or forgery. (Docket No. 31 at 6 – 13). In considering this argument, the Court will "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." *Toribio*, 2014 WL 661341 at * 2 (quoting *Wilson*, 212 F. 3d 789). The Court first notes that from the Police Citizen Complaint Report, Weibel failed to note that: Wilbert claimed that Plaintiff fraudulently obtained the Loan in Wilbert and her husband's name; Wilbert had no knowledge of the Loan before evicting Plaintiff; and, Wilbert proactively sought to press charges against Plaintiff. (Docket No. 1-2 at 1 – 2).

From the Initial Report[2] of Weibel's interview with Wilbert, Weibel also failed to indicate that: when viewing checks from the joint account held by Plaintiff and Wilbert, which included Wilbert's signature, Wilbert claimed that none of the signatures were hers, but that she was "unsure about two signatures which could be hers;" and, Wilbert explained that she recalled signing checks for what she believed was the purchase of appliances – for which she had been under the impression Plaintiff had procured a small loan. (Docket No. 18 at 2). Plaintiff also

---

[2] "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *West Penn Allegheny Health System, Inc. v. UPMC*, 627 F. 3d 85, 97 n. 6 (3d Cir. 2010). An exception exists for documents that are "*integral to or explicitly relied* upon in the complaint." *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F. 3d 1410, 1426 (3d Cir. 1997)). The critical factor is whether a document is the basis for a claim, not simply whether it was explicitly cited. *In re Burlington*, 114 F. 3d at 1426. Currently, although not included as an attachment to her Amended Complaint, Plaintiff does not object to citation to the Initial Report provided as an exhibit in support of Weibel's Motion to Dismiss, and Plaintiff cites to this Report to support her arguments against dismissal. (Docket No. 31 at 2 n. 1). Moreover, in her Amended Complaint, Plaintiff relies upon evidence contained within the Initial Report, but not explicitly cited. (Docket No. 27 at 5 – 7). As such, the Court finds that consideration of the Initial Report for purposes of the present motions to dismiss is not improper.

looks to the fact that Cichoski and McCreary informed Weibel that the Loan documents had been signed outside their presence, and they had no knowledge of Plaintiff's involvement in procurement of the Loan. (Docket No. 31 at 3 – 4, 7 – 10). Cichoski did not affix his signature at all to the documents, as he should have, and McCreary did not follow proper notary practices when she notarized the Loan documents. (*Id.*).

However, contrary to Plaintiff's assertions, the Court finds that the inclusion of such additional information in Weibel's Affidavit would only have served to strengthen her argument for the existence of probable cause to arrest Plaintiff for theft by deception and/or forgery. These facts demonstrated that Plaintiff had motive and opportunity, and that she was directly accused of the crime by the purported victim. *See Pavulak*, 700 F. 3d at 666 (Plaintiff must show that "there would have been no probable cause but for" an omission.). The Court is thereby compelled to find that – even when viewing the facts in the light most favorable to Plaintiff – the facts included within the Affidavit, as well as those outside the Affidavit and known to Weibel at the time of her application for a warrant, were not so "lacking in indicia of probable cause" that no "officer of reasonable competence would have requested the warrant." *Messerschmidt*, 132 S. Ct. at 1245, 1249 (citations omitted).

Qualified immunity is "immunity from suit rather than a mere defense to liability." *Pearson*, 555 U.S. at 231. The "'driving force' behind the creation of the qualified immunity doctrine was a desire to ensure that 'insubstantial claims' against government officials will be resolved prior to discovery." *Id.* (quoting *Anderson*, 483 U.S. at 640 n. 2). It is exceedingly important to resolve this issue at the "earliest possible stage in litigation." *Id.* (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Here, even viewing the facts as alleged by Plaintiff to be true, the Court finds that qualified immunity must preclude the present suit against Weibel for

15

false arrest from proceeding any farther. There is nothing of record to indicate that Weibel was "plainly incompetent" in executing her duties, or that Weibel knowingly or recklessly deprived Plaintiff of her rights. As such, Weibel's Motion to Dismiss Count I of Plaintiff's Amended Complaint for false arrest will be granted.

### 2. Count II: Malicious Prosecution

In Count III of Plaintiff's Amended Complaint, she argues that under § 1983 Weibel is liable for malicious prosecution in violation of the Fourth Amendment. (Docket No. 27 at 17 – 18). Under § 1983, liability for malicious prosecution lies when a proceeding brought against a plaintiff "was initiated without probable cause." *Toribio*, 2014 WL 661341 at *4 (quoting *DiBella v. Borough of Beachwood*, 407 F. 3d 599, 601 (3d Cir. 2005)). As per the Court's discussion above, there was sufficient evidence provided by Weibel to establish probable cause to arrest Plaintiff for theft by deception and/or forgery under Pennsylvania law. *Id.* Even had probable cause not existed, this Court finds Weibel qualifiedly immune due to the objective reasonableness of her actions in seeking the warrant for Plaintiff's arrest. Therefore, Weibel's Motion to Dismiss Count III of Plaintiff's Amended Complaint will be granted.

### B. Remaining Counts

In light of Plaintiff's failure to assert federal claims against any parties other than Weibel, (Docket No. 27 at 15 – 22), and those Counts against Weibel having been dismissed by this Court, the Court will accordingly decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims against Weibel, Wilbert, McCreary, and Huntingon. *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F. 3d 131, 135 (3d Cir. 2013) (A district court may decline to exercise supplemental jurisdiction when "the district court has dismissed all claims

over which it has original jurisdiction."). As such, Plaintiff's Amended Complaint will be dismissed in its entirety.

C. **Leave to Amend**

The United States Court of Appeals for the Third Circuit has held that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245. Further, "even when [a] plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time." *Id*. Here, however, amendment would prove futile because the Court has found that the Affidavit, on its face, provided sufficient evidence to establish probable cause to arrest Plaintiff, and that qualified immunity is properly applied based on the present facts. Plaintiff was already given the opportunity to amend her complaint, and a second opportunity would not prove fruitful; therefore, dismissal will be granted with prejudice.

V. CONCLUSION

Based upon the foregoing, Plaintiff has failed to plead facts sufficient to demonstrate that Defendant Weibel could be held liable for false arrest and malicious prosecution in violation of the Fourth Amendment under § 1983, even when viewing the facts in the light most favorable to Plaintiff as the non-moving party. Further, Plaintiff has not demonstrated to this Court that qualified immunity should not attach to Weibel given the objective reasonableness of her actions in seeking a warrant to arrest Plaintiff. As such, Counts I and III of Plaintiff's Amended Complaint are dismissed, with prejudice. Additionally, the Court will not exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and therefore Wilbert's motion, and the

remainder of Weibel's motion addressing state law claims brought against her, are denied as moot. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Dated: February 28, 2014

cc/ecf: All counsel of record.